EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vicar Builders Development, Inc.<br><br>        Peticionario<br><br>                   v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de Justicia; Departamento de Hacienda<br><br>        Recurridos | Certiorari<br><br>2015 TSPR 13<br><br>192 DPR ____ |

Número del Caso: CC-2013-776

Fecha: 11 de febrero de 2015

Tribunal de Apelaciones:

        Región Judicial de San Juan

Abogado de la Parte Peticionaria:

        Lcdo. Alberto Aresti Franceschini

Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. María C. Umpierre Marchand
        Procuradora General Auxiliar

Materia: Contratación Gubernamental – Invalidez de la figura de la tácita reconducción a la contratación con el Estado.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Vicar Builders Development, Inc.

        Peticionario

           v.

                      CC-2013-0776

Estado Libre Asociado de Puerto
Rico; Departamento de Justicia;
Departamento de Hacienda

        Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 11 de febrero de 2015.

En esta ocasión nos corresponde determinar si la figura de la tácita reconducción es aplicable a un contrato de arrendamiento otorgado con el Estado y si, a base de ello, procede el reclamo de unos cánones de arrendamiento adeudados por el Estado. Resolvemos que la tácita reconducción no es compatible con los estatutos que regulan la contratación gubernamental, por lo que no puede aplicar a un contrato en el que el Estado es parte.

I

El 22 de mayo de 2008, Vicar Builders Development, Inc. ("Vicar Builders") otorgó un

contrato de arrendamiento con opción a compra en el que figuró como parte arrendadora. En ese contrato, arrendó al Departamento de Justicia de Puerto Rico ("el Departamento") un inmueble de tres pisos situado en Bayamón, con facilidades de oficina y estacionamiento. Las partes acordaron un canon mensual de arrendamiento que ascendía a $32,812.30. El contrato tenía un término de vigencia de un año.

Luego, el 20 de mayo de 2009, las mismas partes otorgaron un segundo contrato extendiendo el término del arrendamiento por un año. Vencido el término pactado en el segundo contrato, el Departamento permaneció ocupando el inmueble sin efectuar los pagos mensuales correspondientes. Vicar Builders le reclamó el pago de los cánones adeudados, y el Departamento pagó solo hasta el mes de diciembre de 2011. Después de esa fecha, no realizó pago alguno por concepto de los cánones de arrendamiento del inmueble, el cual continuó disfrutando.

El 26 de abril de 2012, Vicar Builders presentó una demanda de cobro de dinero contra el Estado, el Departamento de Justicia y el Departamento de Hacienda en cuanto a los cánones de arrendamiento adeudados desde enero de 2012 hasta abril de 2012. Para ese entonces, la deuda sumaba un total de $131,249.20. Alegó que la deuda estaba vencida, líquida y exigible y que era de aplicación la doctrina de la tácita reconducción. Por su parte, el Estado adujo que al no existir un contrato escrito y firmado por

las partes, no adeudaba cantidad alguna a los demandantes. Argumentó en contra de la aplicabilidad de la doctrina de tácita reconducción a los contratos gubernamentales ya que vulneraría los estatutos especiales que imponen requisitos estrictos para la contratación con el gobierno.

El Tribunal de Primera Instancia desestimó la demanda con perjuicio y se negó a aplicar la doctrina de tácita reconducción al contrato en cuestión. Se basó en que Vicar Builders no logró demostrar que se cumplió con los requisitos de contratación gubernamental como, por ejemplo, que existe un contrato escrito que vincula a las partes y que está inscrito en la Oficina del Contralor. Apéndice, pág. 25. Inconforme, Vicar Builders acudió al Tribunal de Apelaciones mediante un recurso de apelación. El foro apelativo intermedio confirmó la sentencia apelada.[1] En vista de ello, Vicar Builders presentó un recurso de _certiorari_ ante este Tribunal solicitando que revoquemos la determinación de los foros inferiores y apliquemos la doctrina de la tácita reconducción. Arguyó que se cumplió con los requisitos de contratación gubernamental por existir un contrato de arrendamiento escrito y válido. Señaló también como error la determinación de que la validez de la obligación no había sido evidenciada y por lo tanto no procede el desembolso de fondos públicos. Con el beneficio de la comparecencia de las partes, resolvemos.

II

---

[1]  La Jueza Fraticelli Torres emitió un voto disidente. Apéndice, pág. 32.

A

Cuando un contrato de arrendamiento se pacta por tiempo determinado, queda concluido para la fecha prefijada sin que sea necesario requerirlo. Art. 1455 del Código Civil de Puerto Rico, 31 LPRA sec. 4062. Ese tipo de contrato es susceptible de prórroga, en cuyo caso subsiste el mismo contrato, o de renovación, que es a base de un nuevo contrato de arrendamiento otorgado expresa o tácitamente. M. Albaladejo García, Derecho Civil, 7ma ed., Madrid: Editoriales de Derecho Reunidas, 1993, Tomo II, Vol. II., pág. 190.

El Art. 1456 del Código Civil de Puerto Rico, 31 LPRA sec. 4063, dispone que cuando termina un contrato de arrendamiento y el arrendatario permanece disfrutando de la cosa arrendada por quince días con aquiescencia del arrendador, hay tácita reconducción.

La tácita reconducción no supone una prórroga del contrato original, sino que constituye un contrato nuevo. Dalmau v. Hernández Saldaña, 103 DPR 487, 490 (1975). Esto es así porque, por disposición expresa de la ley, el arrendamiento cesa cuando vence su término, extinguiendo así el contrato original. Cesani Vargas v. Tribunal Superior, 92 DPR 239 (1965). Sin embargo, cuando concurren los requisitos de la tácita reconducción se renueva ese contrato. Íd. Se trata de un supuesto de renovación que surge por la voluntad presunta de las partes siempre que la

pasividad de estas revele su nueva voluntad contractual. Albaladejo García, op. cit., pág. 194.

Del acuerdo tácito surge un nuevo contrato, cuyo término no es igual al estipulado en el contrato primitivo, sino el que disponen los Arts. 1467 y 1471 del Código Civil, 31 LPRA secs. 4083 y 4092. De esos artículos se desprende que de no haberse fijado un plazo para el arrendamiento de un predio urbano se entenderá hecho por años cuando el alquiler es anual, por meses cuando el alquiler es mensual, o por días cuando es diario. Dalmau v. Hernández Saldaña, supra, pág. 489. En cuanto a lo demás, "se entiende que quedan reproducidos los mismos términos del contrato reconducido". Íd. Véase, además, León Parra v. Gerardino, 58 DPR 489 (1941).

Para que opere la tácita reconducción, ninguna de las partes puede haber expresado su intención de dar por terminado el contrato de arrendamiento. León Parra v. Gerardino, supra, pág. 490. Debe ser claro el ánimo de reconducir del arrendatario, el cual queda demostrado al quedarse disfrutando de la cosa arrendada luego de que vence el contrato. De igual forma, se entiende que el arrendador consintió tácitamente a la reconducción si no hace requerimiento o manifestación alguna para que el arrendatario cese en el disfrute de la cosa. Íd.

B

El Art. VI, Sec. 9 de la Constitución de Puerto Rico, LPRA, Tomo 1, dispone que "[s]ólo se dispondrá de las

propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del estado, y en todo caso por autoridad de ley". Con miras a lograr la sana administración de los fondos públicos se ha aprobado legislación para establecer un control sobre el desembolso de esos fondos y sobre la contratación gubernamental. Rodríguez Ramos et al. v. ELA et al., Op. de 6 de marzo de 2014, 2014 TSPR 32, 2014 JTS 41, 190 DPR __ (2014). Tanto los procedimientos establecidos en las leyes como los preceptos de sana administración pública delimitados en nuestra jurisprudencia imponen un límite a la facultad del Estado para desembolsar fondos públicos. Jaap Corp. v. Depto. Estado et al., 187 DPR 730, 741 (2013).

El Art. 2 de la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283a, establece como política pública mantener un "control previo de todas las operaciones del gobierno", que la contabilidad del gobierno de Puerto Rico "constituya un control efectivo sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno" y que "los gastos del gobierno se hagan dentro de un marco de utilidad y austeridad". Asimismo, dispone que los fondos autorizados para un año económico se aplicarán únicamente al pago de gastos legítimamente incurridos durante ese año o de "obligaciones legalmente contraídas **y debidamente asentadas en los libros** durante

dicho año". (Énfasis nuestro.) Art 8. de la Ley Núm. 230 de 23 de julio de 1974, 3 LPRA sec. 283g(a). Cabe destacar que esta ley define el término "obligación" como "[u]n compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible". Art. 3(k) de la Ley Núm. 230 de 23 de julio de 1974, 3 LPRA sec. 283b(k).

El Estado posee un gran interés en promover una sana y recta administración pública y en prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental. CMI Hospital v. Depto. Salud, 171 DPR 313, 320 (2007). En ese ánimo, hemos favorecido la aplicación de una normativa restrictiva en cuanto a los contratos entre un ente privado y el gobierno. Véase Cordero Vélez v. Mun. de Guánica, 170 DPR 237, 248 (2007); Lugo v. Mun. de Guayama, 163 DPR 208, 215 (2004). Es por eso que hemos reiterado la rigurosidad de las disposiciones de ley que rigen la contratación gubernamental, asunto que está revestido del más alto interés público. ALCO Corp. v. Mun. de Toa Alta, 183 DPR 530, 533 (2011); Cordero Vélez v. Mun. de Guánica, supra; Fernández & Gutiérrez v. Mun. San Juan, 147 DPR 824, 829 (1999). La validez de este tipo de contrato se determina a base de estatutos especiales que lo regulan, y no a base de las teorías generales de contratos. ALCO Corp. v. Mun. de Toa Alta, supra, pág. 537, citando a

<u>Quest Diagnostics v. Mun. San Juan</u>, 175 DPR 994, 1000 (2009).

El Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 LPRA sec. 97, dispone que

> [l]as entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda… Cuando se otorguen escrituras sobre la adquisición o disposición de bienes raíces se le enviará también al Contralor, copia de todo escrito y documento relacionado con la negociación.

El período de quince días podrá extenderse solo por quince días más si se demuestra justa causa. <u>Íd.</u> El incumplimiento con esa disposición "de por sí no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. No obstante, ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en esta sección". Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97(d).

En reiteradas ocasiones, hemos señalado los requisitos formales que deben observarse al contratar con un ente gubernamental: 1) reducir el contrato a escrito; 2) mantener un registro para establecer su existencia; 3) enviar copia a la Oficina del Contralor de Puerto Rico; y 4) acreditar la certeza de tiempo, a saber, que fue realizado y otorgado quince días antes. <u>Rodríguez Ramos et</u>

al. v. ELA et al., supra; ALCO Corp. v. Mun. de Toa Alta, supra, pág. 537; Jaap Corp. v. Depto. Estado et al., supra. Véase, además, Ocasio v. Alcalde Mun. de Maunabo, 121 DPR 37 (1988). Se exige el cumplimiento riguroso con cada uno de esos requisitos, ya que sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas. ALCO Corp. v. Mun. de Toa Alta, supra, citando a Ocasio v. Alcalde Mun. de Maunabo, supra, págs. 53-54.

En cuanto al primer requisito —que el contrato conste por escrito— hemos establecido que su cumplimiento es indispensable para que el contrato tenga efecto vinculante entre las partes. Rodríguez Ramos et al. v. ELA et al., supra; Jaap Corp. v. Depto. Estado et al., supra, pág. 741. "El contrato escrito es '... la mejor evidencia de las obligaciones recíprocas que contraen las partes'". ALCO Corp. v. Mun. de Toa Alta, supra, pág. 538, citando a Colón Colón v. Mun. de Arecibo, 170 DPR 718, 726 (2007). Los términos del contrato quedan plasmados de forma objetiva en el escrito, evitando que surjan controversias sobre los mismos. Íd. Ese requisito

> tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en

cumplimiento con la ley. Jaap Corp. v. Depto. Estado et al., supra, pág. 742, citando a Colón Colón v. Mun. de Arecibo, supra, pág. 730.

El carácter sustantivo del requisito del contrato escrito supone que su incumplimiento afecta adversamente la eficacia de la obligación en él contraída. Colón Colón v. Mun. de Arecibo, supra. En Fernández & Gutiérrez v. Mun. de San Juan, supra, págs. 833-834, expresamos que el compromiso

> …no podía generar obligación jurídica de clase alguna para el Municipio, debido a que éste *no se hizo* en conformidad con las normas aplicables expuestas antes. El supuesto "compromiso" *no constaba en un contrato escrito*. […] no se incluyó en la enmienda al contrato. Por ende, tampoco fue registrado ni presentado en la Oficina del Contralor. La ausencia de estos elementos, que según hemos expuesto antes son de observancia rigurosa, privan de eficacia y validez al supuesto acuerdo del arrendador con la Directora Ejecutiva de extender la duración del arrendamiento en cuestión. El requisito de formular lo acordado mediante un contrato escrito, era indispensable y, como resolvimos en *Hatton v. Mun. de Ponce*, supra, hay que cumplirlo "*sin excepción alguna*", para que lo convenido sea vinculante. (Énfasis nuestro.)

De igual forma, en Cordero Vélez v. Mun. de Guánica, 170 DPR 237 (2007), las partes nunca otorgaron un contrato por escrito ni cumplieron con las formalidades aplicables a los contratos municipales. Allí concluimos que no se perfeccionó un contrato entre las partes y, por lo tanto, no procedía la reclamación contra el municipio. Íd.

Por su parte, en ALCO Corp. v. Mun. de Toa Alta, supra, se rechazó la contratación municipal retroactiva y

se determinó que era necesaria la existencia de un contrato escrito antes de prestar los servicios pactados. En ese caso, ALCO comenzó a pavimentar un área del municipio de Toa Alta sin que antes se suscribiera el contrato por escrito. Las partes otorgaron el contrato por escrito y cumplieron con las demás exigencias de la ley después de que ALCO completara la ejecución de la obra. En esa ocasión dispusimos que validar un contrato retroactivo con un municipio "…ignoraría el interés público de regular las inspecciones de la obra y restringir los parámetros de subcontratación…". Íd., pág. 551.

Por otro lado, exigir que los contratos se mantengan en un registro fiel que establezca su existencia y que copia de ese contrato se remita a la Oficina del Contralor responde a ofrecerle publicidad a todo contrato que involucre a una entidad municipal. Colón Colón v. Mun. de Arecibo, supra, pág. 730. De esa forma, se facilita que un tercero pueda fiscalizar los negocios del Estado. Íd.

Por lo tanto, surgirá una obligación por parte del Estado "únicamente cuando exista un contrato en virtud de un compromiso legalmente válido". ALCO Corp. v. Mun. de Toa Alta, supra, pág. 539. Una vez satisfechos los requisitos mencionados, los contratos serán válidos, exigibles y gozarán de la publicidad requerida por nuestro ordenamiento para la sana administración de la política pública en cuanto a la contratación gubernamental respecta. ALCO Corp.

v. Mun. de Toa Alta, supra, citando a Johnson & Johnson v. Mun. De San Juan, 172 DPR 840, 853 (2007).

III

En este caso, las partes otorgaron un contrato de arrendamiento válido que satisfizo todos los requisitos aplicables a los contratos gubernamentales. El contrato constaba por escrito, se registró y se remitió su copia a la Oficina del Contralor. Ese contrato tenía un término de vencimiento de un año. Llegada la fecha pactada para dar por terminado el arrendamiento, el contrato se extinguió.

No obstante, el Departamento permaneció ocupando el inmueble por más de quince días, con conocimiento de Vicar Builders y sin que ambos manifestaran deseo alguno de dar por terminado el arrendamiento. Esa situación supone que podría operar la figura de la tácita reconducción, pues están presentes todos los requisitos. De ser así, habría un nuevo acuerdo con vigencia de un mes, dado que el contrato original establecía un canon de arrendamiento mensual. De esa manera, seguiría renovándose tácitamente el acuerdo cada mes mientras el Departamento continuara disfrutando de la cosa por más de quince días bajo las mismas circunstancias. Sin embargo, la ley y razones poderosas de política pública impiden que opere la figura de la tácita reconducción en la contratación gubernamental.

La naturaleza de la figura de la tácita reconducción no es compatible con las leyes ni la jurisprudencia que regulan la contratación gubernamental. Cuando opera la

tácita reconducción surge un contrato nuevo mediante un acuerdo tácito entre las partes que se desprende del comportamiento de ambos, el arrendador y el arrendatario. Véase, Dalmau v. Hernández Saldaña, supra. El acuerdo implícito es lo que caracteriza esa obligación. Sin embargo, para que un contrato otorgado con el Estado vincule a las partes, tiene que constar por escrito. Véase Jaap Corp. v. Depto. Estado et al., supra, pág. 741. Ese requisito de forma es insoslayable en este tipo de contrato. Por lo tanto, un contrato en el que el Estado es parte no puede surgir de un acuerdo tácito ni de las actuaciones de las partes.

De ahí se desprende la incompatibilidad de ambas figuras jurídicas. Si existe un contrato gubernamental por escrito, no cabe hablar de tácita reconducción. De igual forma, si están presentes los requisitos de la tácita reconducción no existe un contrato escrito que cumpla con las exigencias requeridas para vincular al Estado. Es decir, surgiría un contrato nuevo que no está por escrito, no está registrado y no se envió a la Oficina del Contralor.

Las exigencias estatutarias que excluyen la aplicación de la figura de la tácita reconducción son insubsanables. Se podría argüir que el nuevo contrato que surge tácitamente puede reducirse a escrito posteriormente y enviarse a la Oficina del Contralor, en cumplimiento con sus exigencias. Sin embargo, en ese caso estaríamos

permitiendo una práctica que este Tribunal ha invalidado anteriormente —la contratación retroactiva con el gobierno. Véase ALCO Corp. v. Mun. de Toa Alta, supra. Es decir, una parte estaría disfrutando de una cosa arrendada por un tiempo sin que exista una relación contractual válida y exigible. Si las partes decidiesen reducir a escrito el acuerdo que nace con la tácita reconducción, el efecto vinculante surgiría luego de que una parte haya obtenido un beneficio o disfrutado de la cosa arrendada. Si permitimos ese supuesto, estaríamos avalando un contrato que recoge una obligación anterior bajo la cual ya las partes han hecho prestaciones. Eso es precisamente lo que este Tribunal ha prohibido anteriormente.

La aplicación de la figura de la tácita reconducción le concedería al Estado una vía para evadir el cumplimiento con los requisitos impuestos en los estatutos citados y que este Tribunal ha reconocido como necesarios para que un contrato gubernamental tenga eficacia jurídica. Estaríamos abriéndole la puerta al Estado para renovar contratos tácitamente que, por falta de publicidad, no puedan ser fiscalizados por terceros y distorsionen la realidad contenida en los registros de contratos. No podemos apoyar la aplicación de esa figura cuando su efecto sería reducir la transparencia de los negocios que involucren al gobierno y dar paso a que el gobierno otorgue contratos por un término mayor al que se expresó en el contrato escrito. Eso

es precisamente lo que las leyes en cuestión pretenden erradicar.

Si en el pasado invalidamos la extensión de la vigencia de un contrato con un municipio, hecha por acuerdo expreso de las partes contratantes, es lógico concluir que también es inválida la extensión tácita de la vigencia de un contrato de arrendamiento con el Estado. Véase Fernández & Gutiérrez v. Mun. de San Juan, supra. Las partes privadas que contratan con los municipios y las agencias del gobierno tienen que contratar de acuerdo con lo que la ley exige. Se requiere "que las partes privadas ejerzan un rol más activo al contratar…". CMI Hospital v. Depto. Salud, supra, pág. 321. Por eso, para evitar situaciones irregulares en las que el Estado termine lucrándose injustificadamente, las partes deberán ser meticulosas al otorgar sus contratos. La manera en que las partes pacten las cláusulas contractuales será determinante al decidir qué procede cuando vence un contrato de arrendamiento otorgado con el gobierno. Solo así podrá subsanarse cualquier situación que pueda poner en desventaja a una parte privada ante el Estado.

Comprendemos que, al no aplicar la tácita reconducción, hay una situación en la que el gobierno podría permanecer en un inmueble sin pagar renta hasta ser desahuciado tras el vencimiento del contrato de arrendamiento. Esa situación puede preverse en el contrato de arrendamiento, pactando de antemano bajo qué condiciones

se extendería el arrendamiento, por cuánto tiempo adicional y cuál será el canon a pagar. Incluso, y sin pretender ser exhaustivos, las partes cuentan con la alternativa de incluir cláusulas penales en sus contratos para evitar que una parte se vea afectada ante el incumplimiento de la otra.

Aunque no hay duda de que en este caso están presentes todos los requisitos y aunque hubo un contrato válido otorgado entre Vicar Builders y el Departamento, no podemos aplicar la figura de la tácita reconducción por ser esta incompatible con los requisitos impuestos por nuestras leyes especiales de contratación gubernamental. Ante ello, no hay una relación contractual válida entre las partes que permita que el Estado desembolse los fondos para el pago de los cánones adeudados y no procede el cobro de la cantidad reclamada por Vicar Builders. El contrato entre las partes cesó en la fecha pactada en el contrato escrito.

IV

Por todo lo anterior, confirmamos al Tribunal de Apelaciones. Por no existir un contrato válido que cumpla con las exigencias de las leyes vigentes, no le corresponde al Estado el pago de los cánones adeudados entre los meses de enero de 2012 a abril de 2012.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Vicar Builders Development, Inc.

    Peticionario

        v.

                          CC-2013-0776

Estado Libre Asociado de Puerto
Rico; Departamento de Justicia;
Departamento de Hacienda

    Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 11 de febrero de 2015.

Por los fundamentos expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, confirmamos al Tribunal de Apelaciones. Por no existir un contrato válido que cumpla con las exigencias de las leyes vigentes, no le corresponde al Estado el pago de los cánones adeudados entre los meses de enero de 2012 a abril de 2012.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita. Los Jueces Asociados señor Kolthoff Caraballo y señor Rivera García disienten sin opinión escrita.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo